UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

PHILIP GIORDANO,
    Petitioner,

v.

No. 3:11-cv-9 (SRU)

UNITED STATES OF AMERICA,
    Respondent.

**RULING ON MOTION FOR RELIEF PURSUANT TO RULE 60(b)**

The petitioner, Philip Giordano, moves for relief from the final judgment of this court denying Giordano's 28 U.S.C. § 2255 petition and denying a Certificate of Appealablity. Giordano asserts that I denied the petition on account of my erroneous conclusion that his claims of improper jury instructions were procedurally defaulted. He argues that, under Rule 60(b) of the Federal Rules of Civil Procedure, I should grant him relief from judgment and should reconsider his claims regarding improper jury instructions. For the reasons discussed below, the motion (doc. # 236) is denied.

**I.    Background**

I assume the parties' familiarity with the facts and restate only those relevant to the instant motion. Giordano is a former mayor of Waterbury, Connecticut. On September 12, 2001, a federal grand jury returned a fourteen-count indictment against Giordano and co-defendant Guitana Jones. The indictment pertained to an allegation that Giordano had sexually abused two minors while he was mayor. The indictment charged Giordano with two counts of violating an individual's civil rights under color of law, in violation of 18 U.S.C. § 242; one count of conspiring with Jones to transmit knowingly the names of the minor victims by using facilities and means of interstate commerce with intent to entice, encourage, offer and solicit criminal sexual activity, in violation of 18 U.S.C. §§ 371 and 2425; and eleven counts of

1

substantive violations of 18 U.S.C. § 2425, each alleging a particular transmission via telephone of the name of a victim with intent to entice, encourage, offer and solicit illegal sexual activity. Jones pleaded guilty to several counts of the indictment on September 10, 2002, and entered into a written cooperation agreement. On January 16, 2003, the grand jury returned a superseding indictment against Giordano adding four additional counts of substantive violations of section 2425.

United States District Judge Alan H. Nevas presided over Giordano's federal jury trial from March 12 to March 24, 2003. During trial, Jones testified that Giordano repeatedly and consistently warned her not to tell anyone about the abuse and to make sure the girls did not say anything either. Giordano threatened that Jones would go to jail if anyone found out. Jones testified that Giordano also repeatedly and consistently told the victims that they needed to remain silent, or else they would "get in trouble" and Jones would go to jail. Jones testified that she was afraid of going to jail, so she kept quiet and made sure the victims did as well.

The minor victims' testimony substantially corroborated Jones's concerning the nature of the acts they performed, the places they performed the acts, and the warnings they received from Jones and Giordano. The victims both testified that they did not tell anyone about the abuse because they feared Giordano. One of the victims, who was twelve at the time of the trial, testified that she was afraid "[b]ecause I didn't know what a mayor was and I was afraid, because he had money and I was afraid he could have someone hurt my family and I was afraid he own everybody." She "thought the Mayor could rule people, like be their boss" and believed, based on Jones's and Giordano's warnings and threats, that Giordano "would have someone hurt my family or that either I would get in trouble" if she revealed the abuse.

2

The other victim, who was ten at the time of the trial, testified that she understood that the mayor's job was to "[p]rotect the city" and "[w]atch[ ] over us, like God." She could not remember whether Giordano told her not to tell anyone about the abuse but testified that she too did not tell anyone about the abuse because she feared Giordano and "thought he had power." She testified that she believed she "would get put in jail" if she told anyone and also thought her mother, Jones, would beat her.

At the close of the case, the court delivered its instructions to the jury. Relevant to the instant motion, the court instructed the jury regarding the necessary elements to prove a defendant guilty of depriving someone of their civil rights while acting under color of law, in violation of 18 U.S.C. § 242. The relevant portion of the instruction on the "color of law" element reads as follows:

> The first element which the government must establish beyond a reasonable doubt is that he acted under color of laws of the State of Connecticut. This means simply that he acted in his official capacity, or else claimed to do so, even if he misused or abused his power by violating the law himself. Color of law means under pretense of law. In other words, the term color of law also includes actions which are not authorized by law, so long as they are performed by utilizing the defendant's legal authority.
>
> So if a public official misuses the power given to him by the law to deprive a named victim or her rights, his misconduct is taken under color of law, even if the law forbids what has been done . . . . Misconduct made possible because the public official is clothed with the authority of the law is action under color of law . . . .

3/24/2003 Trial Tr. at 2102–04. Giordano's trial counsel did not object to the instruction given.

The jury convicted Giordano on all counts of the indictment except one of the section 2425 charges. Acting through his trial counsel, Giordano appealed his conviction and sentence. Though Giordano's trial counsel raised multiple arguments on appeal, he did not claim error in the jury instruction regarding section 242's "color of law" element. The Second Circuit affirmed

3

by published decision and unpublished order. *See United States v. Giordano*, 442 F.3d 30 (2d Cir. 2006); *United States v. Giordano*, 172 F. App'x 340 (2d Cir. 2006). The Court held, in relevant part, that there was sufficient evidence that Giordano acted under "color of law" as required by 18 U.S.C. § 242. On January 11, 2010, following a remand pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), and subsequent appeal to the Second Circuit, the Supreme Court denied certiorari. *Giordano v. United States*, 558 U.S. 1138 (2010). On December 2, 2015, I denied Giordano's section 2255 petition and denied his request for a Certificate of Appealability. On June 21, 2016, the Second Circuit dismissed Giordano's notice of appeal of my ruling and denied his motion for a Certificate of Appealability, concurring with my conclusion that he had "not made a 'substantial showing of the denial of a constitutional right.'" Mandate of USCA, dated 9/7/2016 (doc. # 235). Giordano appealed that ruling to the Supreme Court, which denied his petition for certiorari on January 9, 2017.[1]

## II. Standard of Review

Rule 60(b) permits a party to seek relief from a final judgment under a "limited set of circumstances[.]" *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). Absent a claim that relief from judgment is warranted under a particular circumstance provided by the Rule, the petitioner must rely on the "catch-all" provision found in Rule 60(b)(6). *See id.* at 529. Rule 60(b)(6) "permits reopening when the movant shows any reason justifying relief from the operation of the judgment other than the more specific circumstances set out in Rules 60(b)(1)–(5)." *Id.* (internal quotation marks and alterations omitted); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988).

Although Rule 60(b) generally "vests wide discretion in courts . . . relief under Rule

---

[1] Giordano filed the instant motion, on November 29, 2016, prior to receiving the denial of certiorari. *See* Doc. # 236.

4

60(b)(6) is available only in 'extraordinary circumstances.'" *Buck v. Davis*, 137 S. Ct. 759, 777–78 (2017) (quoting *Gonzalez*, 545 U.S. at 535). To determine whether extraordinary circumstances exist, the court may consider a wide range of factors, including "the risk of injuries to the parties and the risk of undermining the public's confidence in the judicial process." *Id.* (quoting *Liljeberg*, 486 U.S. at 863–64).

Rule 60(b) may not be used to advance a "claim" that is, in effect, a successive habeas petition. *Gonzalez*, 545 U.S. at 531. One indication that a claim is a successive habeas petition cloaked as a Rule 60(b) motion is "if it attacks the federal court's previous resolution of a claim on the merits, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is . . . entitled to habeas relief." *Id.* at 532. A claim is properly brought under Rule 60(b) when it "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id.* Challenging the habeas court's determination of procedural default does not amount to an attack on the court's previous resolution of the claim "on the merits" and is thus a permissible claim under Rule 60(b). *See id.* at 532 n.4. (claim not "on the merits" if it "merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar").

### III. Discussion

Giordano argues that, in denying his section 2255 petition, I improperly relied on the Second Circuit's decision on direct appeal. Specifically, he argues that I erred in holding that his claim of jury instruction error was raised and rejected on direct appeal, and thus was procedurally defaulted. Had I considered the issue on the merits, Giordano contends that I would

5

have found the jury instructions to be erroneous and that his counsel's failure to object to such instructions was ineffective. Moreover, he asserts that the alleged erroneous jury instructions caused him prejudice because, but for that error, it is reasonably probable he would not have been convicted of violating 18 U.S.C. § 242.

Giordano seeks relief under subsections (1) and (6) of Rule 60(b). Giordano is entitled to relief under Rule 60(b)(1) if he can show that the judgment was a product of "mistake, inadvertence, surprise, or excusable neglect[.]" Fed. R. Civ. P. 60(b)(1). Giordano is entitled to relief under Rule 60(b)(6) if he can show "'extraordinary circumstances' justifying the reopening of a final judgment." *Gonzalez*, 545 U.S. at 535 (quoting *Ackerman v. United States*, 340 U.S. 193, 199 (1950)).

As a preliminary matter, I hold that Giordano's motion is properly brought under Rule 60(b) insofar as it attacks the integrity of the federal habeas proceeding and not the merits of the case. *Gonzalez*, 545 U.S. at 534. Giordano's claim that I improperly held certain of his arguments to be procedurally barred is a claim properly brought under Rule 60(b) because it attacks the "nonmerits aspect" of the habeas proceeding. *Id.* To the extent that Giordano seeks to relitigate the merits of his constitutional claims, that portion of the motion is denied as improperly brought under Rule 60(b). *See Harris v. United States*, 367 F.3d 74, 82 (2d Cir. 2004).

In his reply, Giordano states that the "crux" of his claim—both in his original section 2255 petition and the instant motion—is that "the issue of the erroneous jury instruction was not in fact raised or decided on direct appeal." Reply at 3 (doc. # 242). Accordingly, he asserts that I should have evaluated the claim on the merits when deciding his section 2255 petition.

Giordano misreads my prior ruling. To fully explain, I must first provide an overview of

the statute at issue. Giordano challenges his conviction of violating an individual's civil rights while acting under color of law. *See* 18 U.S.C. § 242. To satisfy the "color of law" requirement, the government must show that the "'misuse of power . . . was made possible *only* because the wrongdoer is clothed with the authority of state law[.]'" *United States v. Walsh*, 194 F.3d 37, 50 (2d Cir. 1999) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)) (internal alterations omitted). In other words, the government must prove that, "but for the accused's position of municipal authority, the wrong that was done would not have been possible." *Giordano*, 442 F.3d at 48–49.

Giordano's section 2255 petition raised two claims related to the "color of law" requirement in 18 U.S.C. § 242. First, he argued that there was insufficient evidence for a jury to conclude that he was acting under color of state law when he sexually abused two minors. In denying his petition, I held that he was procedurally barred from relitigating that claim because it was raised and rejected on direct appeal. *See Giordano v. United States*, 2015 WL 7777749, at *8–9 (D. Conn. Dec. 2, 2015), *certificate of appealability denied* (June 21, 2016). Giordano does not challenge that ruling in the instant motion.

Second, Giordano argued that the jury instructions relating to the "color of law" element of section 242 were improper. The relevant portion of the instructions reads as follows: "Misconduct made possible because the public official is clothed with the authority of the law is action under color of law." 3/24/2003 Trial Tr. at 2102–04. The proper instruction, according to Giordano, should have been: "Misconduct made possible *only* because the public official is clothed with the authority of the law is action under color of law."[2] Because he was procedurally

---

[2] The merits of Giordano's requested instruction are not at issue. I do note, however, that Giordano's requested instruction is not necessarily required under *Classic*. *Classic* stated that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken under 'color of law.'" *Classic*, 313 U.S. at 326. Thus, under *Classic*, it is the "misuse of power" that must be made

7

defaulted from challenging the lawfulness of the instruction itself, Giordano contended that his attorney was ineffective for failing to object to the omission of the word "only" from the instruction. Such failure, he argued, amounted to a denial of his constitutional right to have the jury properly instructed on the law. Moreover, he contended that he suffered prejudice from his attorney's failure to object because, but for that instruction, it is reasonably probable that he would not have been convicted of a section 242 offense.

I denied Giordano's ineffective assistance claim regarding his counsel's failure to object to the "color of law" jury instruction for two reasons. First, I held that Giordano had pointed to no authority that the jury instruction was erroneous. *See Giordano*, 2015 WL 7777749 at *10. As a result, it was impossible to show that counsel's failure to object was unreasonable. *See id.* Second, I held that, even if Giordano could have established ineffective assistance, he was unable to demonstrate the requisite prejudice. *See id.*; *see also Strickland v. Washington*, 466 U.S. 668, 669 (1984) (To satisfy the prejudice prong, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."). I held that there was not a reasonable probability that, had the jury instruction included the word "only," the outcome of the proceeding would have been different. *See Giordano*, 2015 WL 7777749 at *10 ("[E]ven if the omission of the word 'only' was erroneous, Giordano cannot demonstrate that its inclusion would have been reasonably likely to

---

possible "only" because the defendant is clothed with the authority of state law. *See id. Classic* does not necessarily require that the unlawful misconduct must have been made possible only because the defendant operated under the authority of state law. Rather, such misconduct must involve the "misuse of power," and that abuse of power must have been made possible only because the defendant had such authority. *See id.* In Giordano's case, all *Classic* requires is that Giordano abused his position of authority in connection with abusing his victims, and that the abuse of his authority was made possible only because the defendant actually had been clothed with such authority under state law. Giordano's misconduct was that he sexually abused children. Giordano's abuse of power was that he used his position of authority to intimidate Jones and the victims into complying with his requests and failing to report such misconduct. That misuse of authority was only made possible because of his position as Mayor of Waterbury. Whether Giordano could have hypothetically abused his victims as a private citizen does not matter because the evidence showed that Giordano intentionally used his position of authority to facilitate such abuse.

8

produce an acquittal."). In support of my holding, I relied on the Second Circuit's conclusion that the evidence was "more than sufficient for the jury to conclude that the abuse was 'made possible *only* because [Giordano was] clothed with the authority of state law." *Giordano*, 2015 WL 7777749 at *10 (quoting *Giordano*, 442 F.3d at 47) (alteration in original) (emphasis added).

I recognize that my reference to the Second Circuit's holding regarding a sufficiency of the evidence claim might have been misleading in the context of discussing an ineffective assistance claim. I am mindful of the fact that the standards regarding the two claims differ. *Compare United States v. Singh*, 390 F.3d 168, 187 (2004) (sufficiency of the evidence), *with Strickland*, 466 U.S. at 669 (prejudice prong of ineffective assistance). The mere fact that the Second Circuit determined that there was sufficient evidence to convict Giordano of a section 242 violation does not, by itself, establish that he was not prejudiced by the omission of a word in the jury instruction. Rather, the Second Circuit's view of the evidence—namely its view that the evidence was "easily sufficient," *see Giordano*, 442 F.3d at 45—bolstered my conclusion that, based on the evidence of the "color of law" element introduced at trial, there was no reasonable probability that the inclusion of the word "only" in the jury instruction would have produced an acquittal. Finally, in a footnote, I noted that it was not at all clear that the exclusion of the word "only" could have altered the meaning of the jury instructions in a manner that was misleading to the jury. *See Giordano*, 2015 WL 7777749, at *10 n.5 ("The word 'because' conveys a causal requirement and the remainder of the instruction on 'color of law' explains that a person 'does not act under "color of law" when he acts solely within the ambit of his personal pursuits and there is no real nexus between the defendant's official duties and the conduct which gave rise to the alleged violations.'") (quoting Gov't Resp. to Am. Mot. to Vacate at 101).

9

Although that discussion addressed whether counsel should have objected to the instruction, the point remains the same in determining whether Giordano suffered prejudice: If Giordano cannot even show how a jury instruction could be misleading to the jury, he cannot establish that a corrected instruction might reasonably have altered the verdict.

The most salient point to be drawn from above discussion is that neither of my holdings regarding Giordano's ineffective assistance claim relied on any determination that Giordano was procedurally defaulted from bringing such claims. Rather, my ruling addressed the merits of his ineffective assistance claim. I am not permitted to reopen an inquiry into the merits under Rule 60(b). Because there is no indication that I improperly held that Giordano's jury instruction claim was procedurally defaulted, Giordano cannot establish that he is entitled to relief under Rule 60(b)(1). Moreover, Giordano points to no "extraordinary circumstances" that would warrant relief under Rule 60(b)(6).

**IV. Conclusion**

For the foregoing reasons, Giordano's Motion for Relief from Judgment (doc. # 236) is denied.

It is so ordered.

Dated at Bridgeport, Connecticut, this 31th day of July 2017.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge