## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PHILIP A. GIORDANO,
  Petitioner,

  v.

UNITED STATES OF AMERICA,
  Respondent.

No. 3:11-cv-9 (SRU)

## <u>ORDER</u>

This is the latest chapter in Philip Giordano's attempt to challenge his 2003 convictions stemming from his repeated sexual abuse of two minors. *See United States v. Giordano*, 442 F.3d 30, 33 (2d Cir. 2006). In 2015, I denied Giordano's 28 U.S.C. § 2255 habeas petition and denied him a certificate of appealability. *See Giordano v. United States*, 2015 WL 7777749, at *35 (D. Conn. Dec. 2, 2015). In 2017, I denied Giordano's motion for relief from judgment pursuant to Rule 60(b). *See Giordano v. United States*, 2017 WL 3262156, at *1 (D. Conn. July 31, 2017). On June 18, 2018, Giordano filed a second Rule 60(b) motion that seeks relief from my order denying his first Rule 60(b) motion. *See* Giordano's Mot., Doc. No. 250. For the following reasons, I **deny** Giordano's second motion for relief pursuant to Rule 60(b).

### I.      Background[1]

Giordano is a former mayor of Waterbury, Connecticut. On September 12, 2001, a federal grand jury returned a fourteen-count indictment against Giordano and co-defendant Guitana Jones. The indictment pertained to an allegation that Giordano had sexually abused two

---

[1] The following is, in large part, taken from the background section of my order denying Giordano's first Rule 60(b) motion. *See Giordano*, 2017 WL 3262156, at *1–2. As I remarked there, my recitation of the background of this long-running case restates only those facts relevant to resolving the instant motion. For a fuller factual and procedural recitation, *see Giordano*, 2015 WL 7777749, at *1–5.

minors while he was mayor.  The indictment charged Giordano with two counts of violating an individual's civil rights under color of law, in violation of 18 U.S.C. § 242; one count of conspiring with Jones to transmit knowingly the names of the minor victims by using facilities and means of interstate commerce with intent to entice, encourage, offer and solicit criminal sexual activity, in violation of 18 U.S.C. §§ 371 and 2425; and eleven counts of substantive violations of 18 U.S.C. § 2425, each alleging a particular transmission via telephone of the name of a victim with intent to entice, encourage, offer and solicit illegal sexual activity.  On September 10, 2002, Jones pleaded guilty to several counts of the indictment and entered into a written cooperation agreement.  On January 16, 2003, a grand jury returned a superseding indictment against Giordano that added four additional counts of substantive violations of section 2425.

United States District Judge Alan H. Nevas presided over Giordano's federal jury trial from March 12 to March 24, 2003.  During trial, Jones testified that Giordano repeatedly and consistently warned her not to tell anyone about the abuse and to make sure the minor victims did not say anything either.  Giordano threatened that Jones would go to jail if anyone found out. Jones testified that Giordano also repeatedly and consistently told the minor victims that they needed to remain silent, or else they would "get in trouble" and Jones would go to jail.  Jones testified that she was afraid of going to jail, so she kept quiet and made sure the minor victims did as well.

The minor victims' testimony substantially corroborated Jones's concerning the nature of the acts they performed, the places they performed the acts, and the warnings they received from Jones and Giordano.  The minor victims both testified that they did not tell anyone about the abuse because they feared Giordano.  One of the minor victims, who was twelve at the time of

the trial, testified that she was afraid "[b]ecause I didn't know what a mayor was and I was afraid, because he had money and I was afraid he could have someone hurt my family and I was afraid he own everybody."  She "thought the Mayor could rule people, like be their boss" and believed, based on Jones's and Giordano's warnings and threats, that Giordano "would have someone hurt my family or that [] I would get in trouble" if she revealed the abuse.

The other minor victim, who was ten at the time of the trial, testified that she understood that the mayor's job was to "[p]rotect the city" and "[w]atch[] over us, like God."  She could not remember whether Giordano told her not to tell anyone about the abuse but testified that she too did not tell anyone about the abuse because she feared Giordano and "thought he had power."  She testified that she believed she "would get put in jail" if she told anyone and also thought her mother, Jones, would beat her.

At the close of the case, the court delivered its instructions to the jury.  As relevant here, the court instructed the jury regarding the elements of the crime of deprivation of rights under color of law, in violation of 18 U.S.C. § 242.  The relevant portion of the instruction on the "color of law" element reads as follows:

> The first element which the government must establish beyond a reasonable doubt is that he acted under color of laws of the State of Connecticut.  This means simply that he acted in his official capacity, or else claimed to do so, even if he misused or abused his power by violating the law himself.  Color of law means under pretense of law.  In other words, the term color of law also includes actions which are not authorized by law, so long as they are performed by utilizing the defendant's legal authority.
>
> So if a public official misuses the power given to him by the law to deprive a named victim of her rights, his misconduct is taken under color of law, even if the law forbids what has been done . . . .  Misconduct made possible because the public official is clothed with the authority of the law is action under color of law . . . .

3/24/2003 Trial Tr. at 2102–04.  Giordano's trial counsel did not object to the instruction given.

The jury convicted Giordano on all counts of the superseding indictment except one of the section 2425 counts.

Acting through his trial counsel, Giordano appealed his conviction and sentence. Though Giordano's trial counsel raised multiple arguments on appeal, he did not claim error in the jury instruction regarding section 242's "color of law" element. The Second Circuit affirmed by published decision and unpublished order. *See Giordano*, 442 F.3d at 33; *United States v. Giordano*, 172 F. App'x 340, 345–46 (2d Cir. 2006). As relevant here, the Second Circuit rejected Giordano's sufficiency challenge to his convictions under section 242. *Giordano*, 442 F.3d at 42–47. Giordano filed a petition for a writ of certiorari, which the Supreme Court denied in early 2007. *See Giordano v. United States*, 549 U.S. 1213 (2007).

In its 2006 rulings, the Second Circuit had also authorized Giordano to seek a limited remand pursuant to *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), so that the district court could determine "whether it would have imposed a materially different sentence if the Sentencing Guidelines" had been advisory at the time of sentencing. *See United States v. Giordano*, 2007 WL 2261684, at *1 (D. Conn. Aug. 6, 2007); *Giordano*, 172 F. App'x at 345–46. Giordano apparently did seek that limited remand; in August 2007, the district court denied Giordano's request for resentencing because "the court conclude[d] that it would not have imposed a different sentence" had the Guidelines been advisory. *Giordano*, 2007 WL 2261684, at *1. Giordano appealed, and the Second Circuit affirmed. *See United States v. Giordano*, 340 F. App'x 751, 754 (2d Cir. 2009). Giordano again filed a petition for a writ of certiorari, and the Supreme Court again denied that petition. *Giordano v. United States*, 558 U.S. 1138 (2010).

In early 2011, Giordano filed a section 2255 habeas petition. *See* Petition, Doc. No. 1. As already described, on December 2, 2015, I denied Giordano's section 2255 petition and his

request for a certificate of appealability.  *See Giordano*, 2015 WL 7777749, at *35.  In 2016, the

Second Circuit also denied Giordano's motion for a certificate of appealability and dismissed his

appeal because Giordano had "not made a 'substantial showing of the denial of a constitutional

right.'"  Mandate, Doc. No. 235 (quoting 28 U.S.C. § 2253(c)(2)).  Giordano sought a petition

for a writ of certiorari, and the Supreme Court denied that petition in January 2017.  *See*

*Giordano v. United States*, 137 S. Ct. 685 (Mem.) (2017).

       In late November 2016, Giordano filed his first Rule 60(b) motion.  In that motion,

Giordano claimed that I denied his habeas petition "on account of my erroneous conclusion that

his claims of improper jury instructions were procedurally defaulted."  *Giordano*, 2017 WL

3262156, at *1.  More specifically, Giordano claimed that I "erred in holding that his claim of

jury instruction error was raised and rejected on direct appeal, and thus was procedurally

defaulted."  *Id.* at *3.  Giordano argued that if I had considered the issue on the merits, I would

have granted Giordano's petition for a writ of habeas corpus based on ineffective assistance of

counsel because the jury instructions were erroneous, his counsel's failure to object to them was

constitutionally ineffective, and the instructions caused him prejudice.  *See id.*

       I denied Giordano's Rule 60(b) motion.  I explained that in denying Giordano's habeas

petition, I had *not* held that Giordano was procedurally barred from bringing an ineffective

assistance of counsel claim regarding his trial counsel's failure to object to jury instructions.  *See*

*id.* at *4–5.  To succeed on an ineffective assistance of counsel claim, "a defendant must

demonstrate both:  (1) that his counsel's performance 'fell below an objective standard of

reasonableness,' and (2) that 'the deficient performance prejudiced the defense.'"  *Giordano*,

2015 WL 7777749, at *6 (quoting *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).  "To

satisfy the performance prong, the petitioner must show that counsel's performance was 'outside

the wide range of professionally competent assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 690). And "[t]o satisfy the prejudice prong, the defendant 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694). "Thus, the mere possibility that a particular deficiency might have prejudiced the defendant does not warrant relief." *Id.*

In denying Giordano's first Rule 60(b) motion, I explained that I denied Giordano's habeas petition, in relevant part, for two reasons. The first was that "Giordano had pointed to no authority that the jury instruction was erroneous." *Giordano*, 2017 WL 3262156, at *5. "As a result, it was impossible to show that counsel's failure to object was unreasonable." *Id.* Thus, Giordano had failed to satisfy the "performance prong" of the ineffective assistance test.

The second was that "even if Giordano could have established ineffective assistance, he was unable to demonstrate the requisite prejudice" because "there was not a reasonable probability that, had the jury instruction included the word 'only,' the outcome of the proceeding would have been different." *Id.* I explained that that holding relied on my view that there was "overwhelming evidence of Giordano's guilt" introduced at trial. *Giordano*, 2015 WL 7777749, at *15 (making that comment in the context of Giordano's ineffective assistance claims generally). I agreed with Giordano that the Second Circuit's holding on direct appeal that the evidence adduced at trial was "easily sufficient" to support his section 242 conviction was not dispositive because it was made in a different context. *See Giordano*, 2017 WL 3262156, at *5; *Giordano*, 442 F.3d at 45. However, the Second Circuit's comment comported with my view of the evidence and "bolstered my conclusion that . . . there was no reasonable probability that the

6

inclusion of the word 'only' in the jury instruction would have produced an acquittal." *Giordano*, 2017 WL 3262156, at *5. Relatedly, I also noted that the instruction as it was given was not clearly misleading; thus, because "Giordano cannot even show how a jury instruction could be misleading to the jury, he cannot establish that a corrected instruction might reasonably have altered the verdict." *Id.* For those reasons, I denied Giordano's first Rule 60(b) motion.

On October 3, 2017, Giordano filed a notice of appeal regarding my ruling and sought a certificate of appealability. *See* Notice of Appeal, Doc. No. 245. In March 2018, the Second Circuit dismissed Giordano's appeal for lack of jurisdiction because it was untimely filed. *See Giordano v. Dep't of Children and Families*, 2018 WL 4849686, at *1 (2d Cir. Mar. 9, 2018). On June 18, 2018, Giordano filed the instant second Rule 60(b) motion. *See* Giordano's Mot., Doc. No. 250. On July 9, 2018, the government filed an opposition. On August 2, 2018, Giordano filed a reply. *See* Giordano's Reply, Doc. No. 252.

## II.     Standard of Review

Rule 60(b) permits a party to seek relief from a final judgment under a "limited set of circumstances[.]" *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). The Rule enumerates five specific circumstances and one catch-all provision. The only specific circumstance at issue here instructs that "the court may relieve a party . . . from a final judgment, order, or proceeding for . . . mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The catch-all provision allows a court to grant relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6); *see also Gonzalez*, 545 U.S. at 529 ("Rule 60(b)(6) . . . permits reopening when the movant shows any reason justifying relief from the operation of the judgment other than the more specific circumstances set out in Rules 60(b)(1)–(5).") (cleaned up); *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988).

Although Rule 60(b) generally "vests wide discretion in courts, . . . relief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'"  *Buck v. Davis*, 137 S. Ct. 759, 777–78 (2017) (quoting *Gonzalez*, 545 U.S. at 535).  To determine whether extraordinary circumstances exist, the court may consider a wide range of factors, including "the risk of injustice to the parties and the risk of undermining the public's confidence in the judicial process."  *Id.* (quoting *Liljeberg*, 486 U.S. at 863–64) (cleaned up).

Rule 60(b) may not be used to advance a "claim" that is, in effect, a successive habeas petition.  *Gonzalez*, 545 U.S. at 531.  One indication that a claim is a successive habeas petition cloaked as a Rule 60(b) motion is "if it attacks the federal court's previous resolution of a claim *on the merits*, since alleging that the court erred in denying habeas relief on the merits is effectively indistinguishable from alleging that the movant is . . . entitled to habeas relief."  *Id.* at 532.  A claim is properly brought under Rule 60(b) when it attacks "not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings."  *Id.*

## III.   Discussion

In my view, Giordano's motion is not properly before me as a Rule 60(b) motion.  Giordano titled his motion as one brought pursuant to Rule 60(b)(1) and repeatedly refers to it that way.[2]  Just like Giordano's first Rule 60(b) motion, the thrust of this motion is that I "erred in concluding that the petitioner was procedurally defaulted in raising the erroneous jury instruction in his 2255 when he never raised the issue in prior proceedings."  Giordano's Mot., Doc. No. 250, at 13.  In addressing Giordano's first Rule 60(b) motion, I explained why that

---

[2] *See, e.g.*, Giordano's Mot., Doc. No. 250, at 14 ("[T]his petitioner is properly before the court on a second Rule 60(b)(1) motion."); Giordano's Reply, Doc. No. 252, at 6–7 ("[T]he petitioner is properly before the court with respect to this second Rule 60(b)(1).").

argument had no legs:  In denying his habeas petition, I addressed Giordano's ineffective assistance of counsel claim with respect to the failure to object to the allegedly erroneous jury instruction *on the merits*.  Thus, insofar as he raises that issue again, Giordano's Rule 60(b) motion is improper for the same reasons I have already stated and re-described above.  *See Giordano*, 2017 WL 3262156, at *4–5.

Although that is the thrust of Giordano's second Rule 60(b) motion, Giordano also uses his second Rule 60(b) motion to attack my ruling denying his first Rule 60(b) motion.  *See* Giordano's Mot., Doc. No. 250, at 13 ("[T]he court once again erred in denying the petitioner's 60(b)(1) motion by again applying the incorrect legal standard.").  That is an unusual attempt and—particularly given the current posture—I will not consider Giordano's current motion as one properly brought under Rule 60(b) to the extent it seeks relief from my ruling denying Giordano's first Rule 60(b) motion.

The procedural posture of Giordano's current motion compels that result.  I issued my ruling denying Giordano's first Rule 60(b) motion on July 31, 2017.  *See* Order, Doc. No. 244.  Giordano filed a notice of appeal on October 3, 2017.  *See* Notice, Doc. No. 245.  In March 2018, the Second Circuit dismissed Giordano's appeal for lack of jurisdiction because the notice of appeal was untimely filed and denied as moot Giordano's motion for a certificate of appealability.  *See Giordano*, 2018 WL 4849686, at *1; Mandate, Doc. No. 249.  In other words, Giordano could have appealed my ruling denying his first Rule 60(b) motion, but he failed to do so.[3]

---

[3]  Giordano attempts to blame this Court for the lateness of his filing.  That is, Giordano alleges that he filed a notice of appeal with this Court in a timely manner but that the "[d]istrict Court alleged that it did not receive the NOA until October 3, 2017, which resulted in the appeals court claiming it was untimely and therefore devoid of jurisdiction."  Giordano's Mot., Doc. No. 250, at 16 n.3.

Courts are clear that a Rule 60(b) motion may not be used as an end run around an appeal. *See Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) ("The Rule may not be used as a substitute for a timely appeal."); *Latham v. Wells Fargo Bank, N.A.*, 987 F.2d 1199, 1203 (5th Cir. 1993) ("Rule 60(b) simply may not be used as an end run to effect an appeal outside the specified time limits, otherwise those limits become essentially meaningless.") (cleaned up); *Swam v. United States*, 327 F.2d 431, 433 (7th Cir. 1964) ("Rule 60(b) was not intended to be an alternative method to obtain review by appeal or as a means of enlarging by indirection the time for appeal."); *Perrin v. Aluminum Co. of America*, 197 F.2d 254, 255 (9th Cir. 1952) ("Rule 60(b) was not intended to be resorted to as an alternative to review by appeal, nor as a means of enlarging by indirection the time for appeal except in compelling circumstances where justice requires that course."); 12 Moore's Federal Practice § 60.69 ("Because Rule 60(b) rulings are final and appealable . . . a party who is aggrieved by an adverse ruling on a Rule 60(b) motion must appeal it or waive any complaints about the ruling.  A party may not simply file a second Rule 60(b) motion on the same ground in lieu of an appeal.").

Giordano did not file a timely appeal of my ruling denying his previous Rule 60(b) motion.  Giordano filed this second Rule 60(b) motion, in part, as a challenge to my ruling denying his first Rule 60(b) motion.  *See* Giordano's Reply, Doc. No. 252, at 4 ("It is this ruling (60(b)(1)) which forms the basis of the instant second 60(b)(1) motion filed by this petitioner."); *id.* at 6–7 ("[T]he District Court once again erred or otherwise made a mistake, when he applied the incorrect legal standard in denying the petitioner's first Rule 60(b)(1) motion and as a result, the petitioner is properly before the court with respect to this second Rule 60(b)(1) seeking relief from judgment.").  Because Giordano's second Rule 60(b) motion is an attempt to circumvent the normal appeals process—and because no extraordinary circumstances compel me to

conclude otherwise[4]—Giordano's instant motion is improper as a Rule 60(b) motion, and I will not consider it as one.

Construing Giordano's instant motion generously, though, I consider it a motion for reconsideration of my ruling denying his first Rule 60(b) motion.[5]  As a motion for reconsideration, though, Giordano's motion is also improper.  By local rule, motions for reconsideration "shall be filed and served within seven (7) days of the filing of the decision or order from which such relief is sought."  D. Conn. L. Civ. R. 7(c)1.  My ruling on Giordano's Rule 60(b) motion was issued on July 31, 2017, and Giordano filed the instant motion on June 18, 2018.  Thus, Giordano filed this motion over 300 days too late.

In any event, even if Giordano's motion were properly before me as a motion for reconsideration, I would deny it.  "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (cleaned up).  The standard for granting a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)) (cleaned up).  A motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits,

---

[4]  Pursuant to Rule 60(b)(6), I may grant Giordano relief for "any other reason that justifies relief."  As noted above, "relief under Rule 60(b)(6) is available only in 'extraordinary circumstances.'"  *Buck*, 137 S. Ct. at 777–78 (quoting *Gonzalez*, 545 U.S. at 535).  Giordano does not claim that I should grant the instant motion on the authority of Rule 60(b)(6), and he does not identify any "extraordinary circumstances" that would warrant that outcome.  I, too, cannot identify any "extraordinary circumstances" warranting relief.

[5]  Giordano circularly denies that the instant motion is a motion for reconsideration.  *See* Giordano's Reply, Doc. No. 252, at 5 ("[T]his petitioner is not requesting that the court 'reconsider' the denial of the petitioner's previously filed Rule 60(b)(1), but rather that in its denial, the court mistakenly applied the wrong standard in justifying the denial.").

or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)) (cleaned up).

Giordano does not point to any controlling decisions or data that I overlooked. Indeed, although Giordano repeatedly asserts that I made a mistake in my ruling denying his first Rule 60(b) motion, I agree with the government that it is difficult to identify what that mistake is—beyond Giordano's simple disagreement with my analysis. *See* Gov't Opp'n, Doc. No. 251, at 8. So far as I can tell, the closest that Giordano comes to alleging a "mistake" in my ruling denying his first Rule 60(b) motion is his assertion that I "failed to use the harmless error doctrine." Giordano's Mot., Doc. No. 250, at 8; *id.* at 13 (arguing that I erred in "fail[ing] to apply the harmless error doctrine to determine the prejudice prong of *Strickland* . . . "). More specifically, Giordano seems to argue that my ruling ran afoul of *United States v. Silver*, 864 F.3d 102 (2d Cir. 2017).

In *Silver*, the Second Circuit on direct appeal vacated the defendant's convictions for honest services fraud, extortion, and money laundering because the district court had—in light of the Supreme Court's holding in *McDonnell v. United States*, 136 S. Ct. 2355 (2016)—erroneously instructed the jury regarding the definition of an "official act" with respect to the crimes of honest services fraud and extortion. 864 F.3d at 105–06. The Second Circuit further held that the district court's "error was not harmless" and so it was required to vacate the judgment of conviction. *See id.* at 106.

Plainly, *Silver* is not controlling precedent that I overlooked because the case is so different from the instant case. Most saliently, *Silver* regarded different statutes—18 U.S.C. § 1951(b)(2) (extortion) and 18 U.S.C. §§ 1341, 1343, and 1346 (honest services fraud)[6]—than

---

[6] *See Silver*, 864 F.3d at 110 n.22.

this case, which involved 18 U.S.C. § 242 (deprivation of rights under color of law).  Further, *Silver* was a direct appeal, and, in this case, Giordano seeks review of my decision not to grant him relief from my order denying his habeas petition.

To the extent that Giordano reads *Silver* to have altered the legal test for determining prejudice in an ineffective assistance of counsel claim, he reads *Silver* incorrectly.  The harmless error standard[7] is not the standard relevant to determining prejudice in ineffective assistance of counsel challenges.  As described above, to satisfy the "prejudice prong" of an ineffective assistance of counsel claim, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  That is the standard I applied in deciding Giordano's habeas petition and his first Rule 60(b) motion.  The Second Circuit applies the same test routinely.  *See, e.g.*, *United States v. Nolan*, 956 F.3d 71, 79 (2d Cir. 2020).  In contrast, Giordano has identified no case in which a court has "appl[ied] the harmless error doctrine to determine the prejudice prong of *Strickland*."  Giordano's Mot., Doc. No. 250, at 13.  Thus, I have not overlooked controlling precedent.  Accordingly, even if I were to consider the instant motion as a motion for reconsideration and address it on the merits, I would deny it.

**IV.    Conclusion**

For the foregoing reasons, Giordano's second Rule 60(b) motion for relief, doc. no. 250, is **denied**.

---

[7]  Pursuant to the "harmless error" standard, "[a]n erroneous [jury] instruction, unless harmless, requires a new trial." *United States v. Sheehan*, 838 F.3d 109, 121 (2d Cir. 2016) (quoting *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994)).  "An error is harmless only if it is 'clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error.'" *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)).

So ordered.

Dated at Bridgeport, Connecticut, this 21st day of December 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge